Jordan K. Cameron (12051)
 jcameron@djplaw.com
DURHAM JONES & PINEGAR, P.C.
3301 N. Thanksgiving Way, Suite 400
Lehi, UT  84043
Telephone: (801) 375-6600
Facsimile: (801) 375-3865

Peter H. Donaldson (9624)
 pdonaldson@djplaw.com
DURHAM JONES & PINEGAR, P.C.
111 East Broadway, Suite 900
P O Box 4050
Salt Lake City, UT  84110-4050
(801) 415-3000

*Attorneys for Defendant, AccessData Group, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| PRIVACY ASSURED INC., Plaintiff, vs. ACCESSDATA CORPORATION LIMITED, et al., Defendants. | ACCESSDATA GROUP, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>Case No.  2:16cv00275<br><br>Judge Clark Waddoups<br><br>Magistrate Judge Brooke C. Wells |
|---|---|

AccessData Group, Inc., by and through counsel, hereby submits this *Opposition to Plaintiff's Motion for Partial Summary Judgment*.

1

## INTRODUCTION

Plaintiff moves for partial summary judgment on what is essentially its Sixth Cause of Action for breach of contract. The Court should deny Plaintiff's *Motion for Partial Summary Judgment* because the contract was terminated in August 2015, before the November 18, 2015 auction for the AD Corp. Collateral, and there were no lingering rights, obligations or choses in action that existed at the time Plaintiff purchased the collateral. At the very least, there are genuine issues of fact that preclude entry of judgment in Plaintiff's favor. Based on the undisputed facts and applicable law and argument set forth herein, the Court should deny Plaintiff's *Motion for Partial Summary Judgment*.

For convenience, this memorandum referrers to AccessData Group, Inc., AccessData Corporation Limited and Privacy-Assured with the same shorthand reference as used in Plaintiff's memorandum. Specifically, AD Group, AD Corp., and Privacy, respectively.

## RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS

**Fact 2**. In the Shared Services Agreement, AD Corp. promised to provide AD Group on request with technical and sales support for the distribution of AD Group's software.

**Response to Fact 2**. The *Shared Services Agreement* was limited geographically and required AD Corp. to provide AD Group with "sales support or any and all software products in the United Kingdom and surrounding regions. . . . [and] shall also provide . . . tech support of said software for customers in the sales areas contemplated in this Agreement." *Shared Services Agreement* at ¶ B.1, <u>Exhibit 1</u>, hereto.

**Fact 3**. In return, the Shared Services Agreement required AD Group to reimburse AD Corp. for all its expenses plus a premium of five percent.

**Response to Fact 3**. Disputed. AD Group was not required to reimburse AD Corp. for "all its expenses" rather, it was required to reimburse AD Corp. for "the costs of such services" that AD Corp. provided to AD Group under the *Shared Services Agreement*. *See id.*, at ¶ A.2. Further, the CEO for AD Corp. testified that AD Corp. was not necessarily entitled to money even if it did perform because there were other variables and when asked specifically whether AD Corp. was "entitled to 5 percent over its costs" Mr. LeeHealey said, "No." *See LeeHealey Depo.*, at 106:20-23, 107:13-22, Exhibit 3, hereto.

**Fact 10**. In his deposition, Mr. Cook admitted on behalf of AD Group that AD Corp.never defaulted on its obligations under the Shared Services Agreement.

**Response to Fact 10**. Disputed. Mr. Cook did not admit that AD Corp. never defaulted. Rather, Mr. Cook responded to counsel's question of whether he "was aware of any time in which [AD Corp.] defaulted under their obligations . . . ." In response, Mr. Cook simply stated, "No." *J. Cook Depo.*, at 105:4-7, Exhibit 4, hereto. Mr. Cook's lack of awareness of a default is immaterial to the question of whether a default actually occurred. In contrast, the former CEO for AD Corp. stated that he did not believe that AD Corp. performed its obligations under the *Shared Services Agreement*. *See LeeHealey Depo.* at 109:15-17, Exhibit 3, hereto.

**Fact 11**. In his deposition, Mr. Cook testified that the Shared Services Agreement was not terminated by AD Group until August 2015

**Response to Fact 11**. Disputed. The cited reference supporting Fact 11 is a question by counsel regarding default of the *Shared Services Agreement* by AD Corp. and is immaterial to the date of termination of the agreement. *See J. Cook Depo.*, at 105:4-17, Exhibit 4, hereto. While the *Shared Services Agreement* was formally terminated in August 2015 (*see* Response to

Interrogatory No. 1 (Exhibit 5, hereto), *Carter Pate Letter* (Exhibit 6, hereto)), AD Corp. did not perform its obligations and was not entitled to payment thereunder. *See LeeHealey Depo.* at 106:20-23, 107:13-22, 109:15-17, Exhibit 3, hereto.

**Fact 14**: Based on his review of the financials for both companies, Mr. Cook admitted that, AD Group never paid AD Corp.the five percent premium to which AD Corp.was entitled under the Shared Services Agreement. His testimony was as follows:

> Q. So as you sit here today, has AccessData Group paid AccessData Corporation, Limited, the 5 percent under the Shared Services Agreement during the course of the agreement?
>
> A. No, because by the time they determined -- I'm not sure why. Sloppiness. But, like I said, those should have been settled on an annual basis, if we're following best practice. Again, I'm not -- that's what I've done in the past. Those were never settled before the unwinding [of AD Group] occurred.
>
> Q. And you saw no evidence that they were settled after the -- during the course of the unwinding and after the unwinding?
>
> A. No.

**Objection to Fact 14**. Fact 14 presents inadmissible testimony of a lay witness regarding accounting methods and practices which should be the subject of expert testimony. *See* Fed. R. Evid. 701-702. Mr. Cook is not identified as an expert in this case and repeatedly stated that he is not the subject matter expert for these accounting issues. *See J. Cook Depo.*, 100:10-13; 114:11-15; 260:23—261:8, Exhibit 4, hereto. Moreover, Mr. Cook repeatedly stated that he did not make a complete review of all financial information and documents. *See id.*, at 127:20-21, 142:5-8, 148: 23—149:1, 152:9-12, 260: 23-25, 261:3-8. Therefore, Mr. Cook's testimony is inadmissible for a lack of foundation, because it is not supported by personal knowledge, and is speculation. *See* Fed. R. Evid. 602,

**Response to Fact 14**. Disputed. Mr. Cook did not testify that AD Group never paid AD Corp. a five percent premium, but rather that he never "saw . . . evidence" of payment in his own research and investigation. Mr. Cook's failure to see evidence of payment is immaterial to the question of whether payment actually occurred. In contrast, AD Group did transfer cash to AD Corp. and paid necessary expenses for AD Corp. *See Trotter Depo*., at 59:25—61:2; 121:23-25; 122:2-4, Exhibit 7, hereto. Further, Mr. Cook did not testify conclusively that money was owed, rather, that he was "not sure why" accounts were not settled. In contrast, AD Corp. did not perform its obligations and was not entitled to payment under the *Shared Services Agreement*. *See LeeHealy Depo*., at 106:20-23, 107:13-22, 109:15-17, Exhibit 3, hereto. Lastly, AD Corp. does not believe that AD Group breached the *Shared Services Agreement* in any way. *See* Response to Interrogatory No. 1, Exhibit 5, hereto.

**Fact 15**. When asked whether the five percent premium was ever paid to AD Corp.during the winding up process for AD Corp, Mr. Cook answered, "No." When asked whether payment should have been made, Mr. Cook answered, "Yes."

**Objection to Fact 15**. Objection. Mr. Cook did not testify as a factual matter that the 5% should have been paid, rather he stated that such should have been paid per "best practice, but it's not required by GAP . . . ." *J. Cook Depo*., at 100: 4-7. This statement is inadmissible testimony of a lay witness regarding accounting methods and practices. *See* Fed. R. Evid. 701-702. Mr. Cook is not identified as an expert in this case and repeatedly stated that he is not the subject matter expert for these accounting issues. *See J. Cook Depo.*, at 100:10-13; 114:11-15; 260:23—261:8, Exhibit 4, hereto. Further, Mr. Cook repeatedly stated that he did not make a complete review of all financial information and documents. *See id.*, at 127:20-21, 142:5-8, 148:

5

23—149:1, 152:9-12, 260: 23-25, 261:3-8. Therefore, Mr. Cook's testimony is inadmissible for a lack of foundation, because it is not supported by personal knowledge, and is speculation. *See* Fed. R. Evid. 602, Moreover, whether payment should have been made requires a legal analysis and conclusion, specifically, whether AD Corp. performed its obligations under the contract thereby entitling it to payment. As a legal conclusion, the testimony is inadmissible.

**Response to Fact 15**. Disputed, Mr. Cook did not testify as a factual matter that the 5% should have been paid, rather he stated that such should have been paid per "best practice, but it's not required by GAP . . . ." *See J. Cook Depo.*, at 100: 4-7, Exhibit 4, hereto. However, Mr. Cook's lay opinion on accounting practices is immaterial to the question of whether payment was owed and paid. To this point, in contrast, AD Group did transfer cash to AD Corp. and paid necessary expenses for AD Corp. *See Trotter Depo.*, at 59:25—61:2; 121:23-25; 122:2-4, Exhibit 7, hereto. Further, AD Corp. did not perform its obligations and was not entitled to payment thereunder. *See LeeHealey Depo.*, at 106:20-23, 107:13-22, 109:15-17, Exhibit 3, hereto. Lastly, AD Corp. does not believe that AD Group breached the *Shared Services Agreement* in any way. *See* Response to Interrogatory No. 1, Exhibit 5, hereto.

**Fact 16**. Mr. Cook testified that at the time of AD Group's unwinding in 2015, "those [i.e., the payments for the five percent premium owing under the Shared Services Agreement] should have been settled through a cash transfer, but I never saw that happen."

**Objection to Fact 16**. Objection. Mr. Cook testimony is inadmissible lay opinion regarding accounting best practice. *See* Fed. R. Evid. 701-702. Mr. Cook is not identified as an expert in this case and repeatedly stated that he is not the subject matter expert for these accounting issues. *See J. Cook Depo.*, 100:10-13; 114:11-15; 260:23—261:8, Exhibit 4, hereto.

Further, Mr. Cook repeatedly stated that he did not make a complete review of all financial information and documents. *See id.*, at 127:20-21, 142:5-8, 148: 23—149:1, 152:9-12, 260: 23-25, 261:3-8. Therefore, Mr. Cook's testimony is inadmissible for a lack of foundation, because it is not supported by personal knowledge, and is speculation. *See* Fed. R. Evid. 602, Moreover, whether payment should have been made requires a legal analysis and conclusion, specifically, whether AD Corp. performed its obligations under the contract thereby entitling it to payment. As a legal conclusion, the testimony is inadmissible.

    **Response to Fact 16**. Mr. Cook's failure to see evidence of payment is immaterial to the question of whether payment was actually made. In contrast, AD Group did transfer cash to AD Corp. and paid necessary expenses for AD Corp. *See Trotter Depo.*, at 59:25—61:2; 121:23-25; 122:2-4, Exhibit 7, hereto. Further, Mr. Cook did not testify conclusively that money was owed, rather, that he was "not sure why" accounts were not settled. Further, AD Corp. did not perform its obligations and was not entitled to payment thereunder. *See LeeHealey Depo*. at 106:20-23, 107:13-22, 109:15-17, Exhibit 3, hereto. Lastly, AD Corp. does not believe that AD Group breached the *Shared Services Agreement* in any way. *See* Response to Interrogatory No. 1. Exhibit 5, hereto.

    **Fact 25**. Privacy-Assured is therefore now the owner of the AD Corp.Collateral. It is the real party in interest entitled to pursue an action for performance and breach of the Shared Service Agreement.

    **Objection to Fact 25**: Fact 25 is a legal conclusion and argument and is not supported by any citation to evidence. As a matter of law, Privacy can only take what AD Corp. had. Because there was no breach by AD Group, AD Corp. had no claim for breach. Further, because AD

Corp. failed to satisfy its obligations under the contract, it cannot enforce the terms thereof. As a matter of law, and as discussed more fully herein, Privacy took nothing through its purchase as a matter of law.

**Fact 26**. As successor to AD Corp, Privacy-Assured is, as a matter of law, entitled to an award of damages from AD Group in an amount to be proven at trial, equaling the total of AD Corp's unreimbursed expenses incurred from September 2011 through September 2015—including the full amount of the Amended Judgment—plus the five percent premium thereon.

**Objection to Fact 26**. Fact 26 is a legal conclusion and argument and is not supported by any citation to evidence. As a matter of law, Privacy can only take what AD Corp. had. Because there was no breach by AD Group, AD Corp. had no claim for breach or damages. Further, because AD Corp. failed to satisfy its obligations under the contract, it cannot enforce the terms thereof or seek damages. As a matter of law, and as discussed more fully herein, Privacy took nothing through its purchase as a matter of law and is not entitled to damages.

## ADDITIONAL UNDISPUTED MATERIAL FACTS

**Additional Fact 1**. AD Corp. entered into a *Distributor Agreement* with Privacy-Assured whereby it agreed to use Privacy-Assured as a distributor of AD Group products. *See Distributor Agreement*; *J. McGuire Written Testimony*, ¶ 5, Exhibit 8, hereto; *B. Roemelle Written Testimony*, ¶¶ 9-11, Exhibit 9, hereto.

**Additional Fact 2**. The purpose of the *Distributor Agreement* was to allow Privacy-Assured to distribute AD Group products and licenses into Canada and to extend AD Corp.'s reach for its sales support to AD Group. *LeeHealey Decl.*, 84:5-14, Exhibit 3, hereto; *B. Roemelle Written Testimony*, ¶¶ 7-10, Exhibit 9, hereto.

**Additional Fact 3**. Privacy-Assured attempted to create new distribution channels for AD Group products in Canada. *J. McGuire Written Testimony*, ¶ 6, Exhibit 8, hereto; *B. Roemelle Written Testimony*, ¶ 20, Exhibit 9, hereto.

**Additional Fact 4**. Privacy-Assured established several reseller relationships for AD Group products with companies in Canada. *J. McGuire Written Testimony*, ¶¶ 8-11, Exhibit 8, hereto; *B. Roemelle Written Testimony*, ¶ 18, Exhibit 9, hereto.

**Additional Fact 5.** Thereafter, AD Corp. refused to provide AD Group products and software license renewals for AD Group products, to Privacy-Assured for resell through its distributors in Canada. *J. McGuire Written Testimony* at ¶ 13, Exhibit 8, hereto; *B. Roemelle Written Testimony*, ¶ 11, Exhibit 9, hereto.

**Additional Fact 6.** Additionally, AD Corp. refused to ship AD Group products an software to customers who had purchased products through Privacy-Assured, or honor any such orders. *See B. Roemelle Written Testimony*, ¶ 24, Exhibit 9, hereto.

**Additional Fact 7**. On March 13, 2013, Privacy-Assured filed its demand for arbitration before the AAA alleging that AD Corp. had breached its *Distributor Agreement* with Privacy-Assured by *inter alia* (1) refusing to allow Privacy-Assured to sell certain products in Canada, and (2) refusing to ship orders to Privacy-Assured customers. *See, generally, Arbitration Statement of Claim*, Exhibit 10, hereto.

**Additional Fact 8**. As the result of the breach, the Arbitration Tribunal awarded Privacy damages in the amount of $2,559,000. *See, generally, Final Award of the Tribunal*, Exhibit 11, hereto.

**Additional Fact 9**. AD Corp. did not perform its obligations under the *Shared Services Agreement*. *See LeeHealey Depo.*, at 109:15-17, Exhibit 3, hereto.

**Additional Fact 10**. AD Corp. is not entitled to payment under the *Shared Services Agreement*. *See id.,* at 106:20-23, 107:13-22.

**Additional Fact 11**. AD Group did not breach the *Shared Services Agreement*. *See* Response to Interrogatory No. 1, Exhibit 5, hereto.

## ARGUMENT

I. AD Corp. DID NOT HAVE ANY CLAIM FOR BREACH OF CONTRACT OR OTHERWISE THAT COULD BE ACQUIRED THROUGH PURCHASE AT AUCTION.

Privacy's claim for breach of contract (i.e., its Sixth Cause of Action) and its corresponding *Motion for Partial Summary Judgment* fundamentally rest on its alleged acquisition of breach of contract claims and other contract rights arising from the *Shared Services Agreement*. However, one cannot acquire rights or claims that do not exist.[1] As explained more fully below, no breach of contract claims against AD Group exist with respect to the *Shared Services Agreement*; no ongoing claim for reimbursement or costs or expenses exists, as the contract was terminated in 2015 (prior to Privacy's purchase of the rights pertaining thereto); and AD Corp. was not entitled to payment in any event as the result of its conduct.

---

[1] *See Wiscombe v. Lockhart Co.*, 608 P. 2d 236 ("An assignment merely sets over or transfers the interest of one party in certain property to another."); *SME Indus., Inc. v. Thompson, Ventulett, Stainback & Assocs*. (citing 6 Am.Jur.2d Assignments § 144 (1999) for the premise that an assignee can acquire no right superior to those held by the assignor, and "simply stands in the shoes of the assignor*"); see Costanzo v. Costanz*o, 590 A.2d 268, 271 (Sup. Ct. N.J. 1991) (holding that a right to a chose in action cannot be assigned if it is "not in existence or cannot be identified"); *University Mews Associates v. Jeanmarie*, 471 N.Y.S.2d 457, 439 (Sup. Ct. N.Y. 1983) ("In the absence of statute, a right or interest is assignable only if at the time of assignment it had an actual or potential existence.").

Based on the fundamentally flawed foundation that Privacy actually acquired some quantifiable right or cognizable claim, Privacy seeks summary judgment on two theories of liability (1) breach of contract with respect to unreimbursed expenses and AD Group's alleged failure to pay AD Corp. a 5% premium identified in the *Shared Services Agreement*; and (2) liability by AD Group for the Arbitration judgment against AD Corp..[2] Each theory fails as a matter of law and the Court should deny Plaintiff's *Motion*. At the very least, there are genuine issues of fact that preclude entry of summary judgment.

### A. Plaintiff's claim for Breach of Contract fails for lack of supporting evidence and as a matter of law.

To prevail on its breach of contract claim, the Plaintiff must show (1) that there was an enforceable contract; (2) that AD Corp. did what the contract required it to do, or that it was excused from performing its contract obligations; (3) that AD Group breached the contract by not performing its obligations; and (4) that AD Corp. was damaged because AD Group breached the contract. *See Bair v. Axiom Design, L.L.C.*, 2001 UT 20, ¶ 14, 20 P.3d 388, 392. Plaintiff's summary judgment fails on points 2, 3 and 4.

Regarding element 2, while Mr. Cook testified that he was unaware of any default under the *Shared Services Agreement* by AD Corp., such is not an admissible statement of fact that no default occurred. Simply, a witnesses' lack of knowledge of a fact is not evidence of that fact. *See, e.g., Alonzo v. Akal Security Inc.*, No. 17-00836, 2019 WL 1130002, *4 (D. Ariz. March 12,

---

[2] Of course, Plaintiff's claim that AD Group should be responsible for AD Corp.'s judgment on a contract theory is merely an end-run around Plaintiff's long-shot alter ego claim. Moreover, this Court previously denied Plaintiff's attempt to end-run its alter ego claim in Case No. 2:14cv00722. *See Memorandum Decision and Order Granting Motion for Reconsideration and Denying Motion for Joinder*, Case No. 2:14cv00722, ECF 254.

2019) (finding that a witness's lack of knowledge or recollection as to a fact could not serve as affirmative evidence of that fact); *Knight v. Philips South Beach, LLC*, No. 09-20473, 2010 WL 11601873, n.3 (S.D. Fla. Nov. 4, 2010) (finding that a witness's lack of knowledge of a fact was not admissible as evidence of that fact); *Cook v. Donahoe*, No. 3:11-cv-132, 2013 WL 93663, *5 (S.D. Ohio Jan. 8, 2013) (same). Conversely, Mr. LeeHealey, the CEO of AD Corp. during the time in question stated that AD Corp. did not perform its obligations under the *Shared Services Agreement*. *See LeeHealey Depo.*, at 109:15-17.

AD Corp.'s obligations under the *Shared Services Agreement* were to provide sales and technical support to AD Group related to AD Group products. *See Shared Services Agreement* at ¶ B.1, Exhibit 1, hereto. The purpose of the contract was to extend AD Group's sales reach. Later, AD Corp. entered into a *Distributor Agreement* with Privacy in Canada. *See* Exhibit 2, hereto. The purpose of the *Distributor Agreement* was to allow Privacy to distribute AD Group products and licenses into Canada and to further extend AD Corp.'s reach for its sales support to AD Group. *See id.*; *see also LeeHealey Decl.*, 84:5-14, Exhibit 3, hereto. Pursuant to the *Distributor Agreement,* Privacy established several reseller relationships for AD Group products with companies in Canada. *See J. McGuire Written Testimony*, ¶¶ 8-11, Exhibit 8, hereto; *B. Roemelle Written Testimony*, ¶ 18, Exhibit 9, hereto. However, AD Corp. refused to provide the AD Group products and software license renewals for AD Group products to Privacy for resell through its distributors in Canada. *See J. McGuire Written Testimony*, ¶ 13, Exhibit 8, hereto; *B. Roemelle Written Testimony*, ¶¶ 11, 24, Exhibit 9, hereto. Through this refusal, AD Corp. breached its *Distributor Agreement*. *See Final Award of the Tribunal*, Exhibit 11, hereto. In doing so, AD Corp. also failed to "provide [AD Group] with sales support of any and all

software products . . . ." Simply, through its refusal to provide AD Group products to Privacy for distribution in Canada, AD Corp. failed to provide sales support for AD Group's products. The very fact that the Arbitration judgment exists is proof that AD Corp. failed to perform its obligations under the *Shared Services Agreement*. Because AD Corp. failed to perform its obligations under the *Shared Services Agreement*, any claim for breach that it may have had (that could have been acquired by Privacy through purchase at auction) also fails.

Regarding Element 3, it is axiomatic in the law that a party that first breaches a contract cannot seek enforcement of the same. *See, e.g., Jackson v. Rich*, 499 P.2d 279, 280 (Utah 1972) ("A party first guilty of a substantial or material breach of contract cannot complain if the other party thereafter refuses to perform. He can neither insist on performance by the other party nor maintain an action against the other party for a subsequent failure to perform."). Because AD Corp. failed to perform its obligations as argued above, AD Group was excused from performing its obligations. Moreover, even if AD Corp. had performed its obligations, there is no evidence that AD Group failed to perform its obligations.

At the outset, AD Corp., the original party in interest, does not believe or allege that AD Group breached the *Shared Services Agreement*. *See* Response to Interrogatory No. 1, Exhibit 5, hereto. Such is sufficient on its own to defeat Privacy's claim. Moreover, Privacy's *Motion* only addresses the payment obligations under the *Shared Services Agreement*, and to this point, AD Group's former CFO, Mr. Jerry Trotter, testified that AD Group did make cash transfers to AD Corp. and paid the other required expenses. *Trotter Depo*. at 59:25—61:2; 121:21-25; 122:1-4, Exhibit 7, hereto. Further, Mr. LeeHealey, who was the CEO of AD Corp. during the time in question, testified that AD Corp. was not entitled to payment. *See LeeHealey Depo.*, at 106:20-

23, 107:13-22, Exhibit 3, hereto. Because AD Corp. was not entitled to payment, a lack of payment, if such occurred, cannot be a breach. Furthermore, the evidence suggests that money, to the extent it was owed, was paid. Accordingly, Plaintiff's claim for breach fails.

Regarding element 4, other than conclusory statements of damages that are not supported by any cited evidence, Privacy has failed to show an incontrovertible basis for damages. In contrast, as argued above, uncontested evidence suggests that AD Group did not breach the agreement, paid all that was owed under the agreement, or that AD Corp. breached the agreement and was not entitled to payment.

Lastly, to the extent Privacy attempts to argue there were any new or continuing obligations under the *Shared Services Agreement*, this argument fails where it is undisputed that the Agreement was terminated in August 2015. *See Carter Pate Letter*, Exhibit 6, hereto. Each parties' obligations under the *Shared Services Agreement* were resolved before terminating the agreement. *See* Response to Interrogatory No. 1, Exhibit 5, hereto. Any obligations between AD Group and AD Corp. that could have existed under the *Shared Services Agreement* were resolved and/or ceased before Privacy execution on the AD Corp. Collateral in November 2015, and Privacy acquired no quantifiable or cognizable claim through its purchase at the auction.

### B. Plaintiff's claim that AD Group is liable for the AD Corp. Judgment finds no support in fact or law.

Privacy does not clearly articulate the basis for its claim that AD Group is somehow contractually liable for Privacy's Arbitration Judgment against AD Corp.. Therefore, AD Group is left to guess as to what Plaintiff's argument and legal theory are. Perhaps the only reasonable argument is that Privacy obtained an indemnification right when it purchased the rights under the *Shared Services Agreement* at auction. However, this argument fails because no such right exists.

14

Pursuant to Utah law, "a party is contractually obligated to assume ultimate financial responsibility for the acts of another 'only when that intention is clearly and unequivocally expressed' in the contract." *Canopy Corp. v. Symantec Corp.*, 395 F. Supp. 2d 1003, 1114 (D. Utah 2005) (citing *Union Pac. R.R. v. El Paso Natural Gas Co.*, 408 P.2d 910, 914 (1965)). There is no language in the *Shared Serviced Agreement* that implies an obligation to indemnify AD Corp. of liability, let alone rising to the "clear and unequivocal" standard Utah applies. *See Shared Services Agreement*, Exhibit 1, hereto. Without an indemnification right, there is no theory under which AD Group is contractually responsible for the AD Corp. Judgment.

To the extent Privacy attempts to characterize the Arbitration Judgement as an expense for which AD Group was responsible under the *Shared Services Agreement*, such a claim also fails. Specifically, (1) the payment provisions of the *Shared Serviced Agreement* cannot be reasonably interpreted to extend to a judgment arising from a separate contract, and (2) AD Corp. breached the *Shared Services Agreement* and is not entitled to payment.

First, contrary to Privacy's argument, the *Shared Services Agreement* does not require that AD Group pay all expenses of AD Corp. incurred in its operation. *See id.*, at A.2. Rather, the contract only required AD Group to pay the "costs of" providing sales and tech support. *See id.* at A.2 and B.1. Simply, the contract required payment of AD Corp.'s actual out of pocket costs that directly tie to AD Corp.'s provision of sales and tech support directly to AD Group. A judgment arising out of AD Corp.'s breach of a *Distributor Agreement* with a third party cannot be reasonably construed as a cost of proving a service to AD Group. If anything, the Arbitration Judgment is a liability that AD Corp. incurred as the result of its failure to provide sales support to AD Group, as argued in Section I.A, above.

Second, as argued above, AD Corp. breached the *Shared Services Agreement*, and even if the Arbitration Judgment could be construed as a cost of providing services to AD Group under the *Shared Services Agreement*, AD Corp.'s breach precludes any claim for reimbursement of such costs.

There is no contractual claim that exists in fact or law that makes AD Group responsible for an Arbitration Judgment arising from an unrelated agreement, therefore, the Court can deny Plaintiff's *Motion* as a matter of law. Alternatively, there is a disputed issue of fact that precludes entry of judgment.

## CONCLUSION

For the foregoing reasons, AD Group respectfully requests that this Court deny Plaintiff's *Motion for Partial Summary Judgment* in its entirety.

DATED this 9th day of September, 2019.

DURHAM JONES & PINEGAR, P.C.


/s/ Jordan K. Cameron
Peter H. Donaldson
Jordan K. Cameron
Attorneys for Defendant AccessData Group, Inc.

## CERTIFICATE OF SERVICE

I certify that on this 9th day of September 2019, I caused a true and correct copy of the foregoing to be filed with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

Timothy Dance
Snell & Wilmer L.L.P.
15 West South Temple, Suite 1200
Salt Lake City, Utah 84101
Email: tdance@swlaw.com
Attorney for Plaintiff, Privacy-Assured Corporation Limited

Shawn H. Robinson
COOK, SKEEN & ROBINSON LLC
5788 South 900 East
Salt Lake City, Utah 841212
Email: srobinsonlaw@hotmail.com
Attorney for Defendants AccessData Corporation Limited, Timothy Leehealey, Simon Whitburn

/s/ Kim Altamirano