Timothy J. Dance (11553)
Alan L. Sullivan (3152), *of counsel*
Snell & Wilmer L.L.P.
15 West South Temple, Suite 1200
Salt Lake City, Utah 84101
Telephone: (801) 257-1900
Facsimile: (801) 257-1800
Email: tdance@swlaw.com
       asullivan@swlaw.com

*Attorneys for Plaintiff Privacy-Assured Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| PRIVACY-ASSURED INC., a Canadian Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>ACCESSDATA CORPORATION LIMITED, a Corporation organized under the laws of England and Wales, ACCESSDATA GROUP, INC., a Delaware Corporation, TIMOTHY LEEHEALY, an individual, SIMON WHITBURN, an individual, and JOHN DOES 1-10<br><br>Defendants. | **PLAINTIFF'S OPPOSITION TO DEFENDANT TIMOTHY LEEHEALY AND SIMON WHITBURN'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Case No. 2:16-cv-00275-CW<br><br>Judge Clark Waddoups |

Plaintiff Privacy-Assured Inc. ("**Privacy-Assured**") respectfully submits this opposition to the Motion for Judgment on the Pleadings (dated September 12, 2019) (Dkt. 75) of defendants Timothy Leehealy and Simon Whitburn.

**SUMMARY**

The only question presented in this motion is whether Privacy-Assured has standing to assert the Eighth Cause of Action of the complaint, which seeks to enforce the fiduciary duties

that Mr. Leehealy and Mr. Whitburn owe to AccessData Corporation Limited (**AD Corp**) and its creditors.  Mr. Leehealy and Mr. Whitburn formed AD Corp under the laws of the United Kingdom in 2009.  At all relevant times since then, they have served as its directors.  Although the parties disagree on whether these defendants later transferred ownership of AD Corp to AccessData Group, Inc. ("**AD Group**") (which Mr. Leehealy appears to control),[1] it is undisputed that they have served as the fiduciaries of AD Corp since 2009.

As the allegations of the complaint show, Privacy-Assured has two different types of standing to enforce these fiduciary duties.  First, in 2015, Privacy-Assured acquired collateral held by AD Corp in a constable's sale held pursuant to a writ of execution issued by this Court.  In that sale, Privacy-Assured acquired all choses in action owned by AD Corp, including its claims for breach of fiduciary duties against Mr. Leehealy and Mr. Whitburn.  Second, the allegations of the complaint show that AD Corp was rendered insolvent by the actions of Mr. Leehealy and Mr. Whitburn, to the prejudice of AD Corp's creditors, including Privacy-Assured. Under the laws of the United Kingdom (which are similar in this respect to the laws in this country), Privacy-Assured is entitled, in its capacity as a creditor, to seek relief for breach of these defendants' fiduciary duties.

The motion for judgment on the pleadings on the Eighth Cause of Action[2] should be denied.

## RELEVANT FACTS FROM THE COMPLAINT

Privacy-Assured's Eighth Cause of Action is based on the numbered allegations of the complaint quoted below. For brevity, Privacy-Assured has omitted citations to the complaint's exhibits.

---

[1] In 2009, shortly after the formation of AD Corp, these defendants executed documents that transferred their shares of AD Corp to "AccessData Inc."  Thereafter, AD Corp and AD Group maintained consolidated financials and reported their parent-subsidiary relationship to regulators for many years.  AD Group, however, now alleges that the transfer was invalid and that Mr. Leehealy and Mr. Whitburn still own AD Corp..

[2] On page 1 of the present motion, defendant states that they seek dismissal of the First through Eighth Causes of Action, but they advance no argument for any claims other than the Eighth Cause of Action.

13. On or before June 3, 2010 Leehealy became the chief executive officer of ADG, LLC, and has served on its board of directors ever since, including after the company was converted to AD Group.

15. On April 28, 2009, AD Corp was formed by filing of that certain Certificate of Incorporation of a Private Limited Company at the Companies House, the registrar of companies for England and Wales. . . .

16. AD Corp was formed to be the international distributor of Access products.

17. At the time of its formation Leehealy was the chief executive officer of AD Corp.

18. At its formation Whitburn and Leehealy were AD Corp's sole directors and each owned one of the two outstanding shares in AD Corp.

19. On September 1, 2009, Leehealy transferred his sole share in AD Corp to "AccessData Inc.", an entity that did not exist at the time, at 384 South 400 West, Suite 200, Lindon Utah 84042. . . . Leehealy later represented that he transferred the shares to what is now AD Group.

20. Leehealy currently claims he has never transferred his interest in AD Corp, however, this statement contradicts his later corporate filings and the express terms of agreements he later executed in 2013.

21. On September 3, 2009, Whitburn transferred his sole share in AD Corp to "AccessData Inc.", an entity that did not exist at the time, at 384 South 400 West, Suite 200, Lindon Utah 84042. . . . Whitburn later represented that he transferred the shares to what is now AD Group.

22. On the AD Corp Annual Return filed with the UK Government Companies House on May 7, 2010, AD Corp Directors Whitburn and Leehealy represented that they had transferred their stock interests to AccessData Inc., which did not exist at the time, and that it was the sole shareholder of AD Corp's stock. . . . As represented below in ¶ 21, Whitburn and

Leehealy have since represented that AD Group, through its conversion from AccessData Group, LLC, is the sole shareholder of AD Corp's stock.

23. On the Amended Annual Return filed by AD Corp with Companies House on September 30, 2011, the AD Corp Directors Whitburn and Leehealy represented that the sole shareholder of AD Corp's stock was AccessData Group, LLC. . . .

24. On the Annual Return filed by AD Corp with Companies House on May 22, 2012, the AD Corp Directors Whitburn and Leehealy represented that the sole shareholder of AD Corp's stock was AccessData Group, LLC. . . .

25. On the Annual Return filed by AD Corp with Companies House on May 7, 2013, the AD Corp Directors Whitburn and Leehealy represented that the sole shareholder of AD Corp's stock was AccessData Group, LLC. . . .

26. On the Annual Return filed by AD Corp with Companies House on May 15, 2014, the AD Corp Directors Whitburn and Leehealy represented that the sole shareholder of AD Corp's stock was AccessData Group, LLC. . . .

27. On the Annual Return filed by AD Corp with Companies House on April 30, 2015, the AD Corp Directors Whitburn and Leehealy represented that the sole shareholder of AD Corp's stock was AccessData Group, LLC. . . .

28. AD Corp, through its auditors, prepared audited financial statements for AD Corp for 2010 which were approved by directors Whitburn and Leehealy, wherein it states that the ultimate parent company of AD Corp is AccessData Group, LLC by virtue of their 100% ownership in AD Corp. . . .

29. AD Corp, through its auditors, prepared audited financial reports for AD Corp for 2011 which were approved by directors Whitburn and Leehealy, wherein it states that the ultimate parent company of AD Corp is AccessData Group, LLC by virtue of their 100% ownership in AD Corp. . . .

30.     AD Corp, through its auditors, prepared audited financial reports for AD Corp for 2012 which were approved by the directors Whitburn and Leehealy wherein it states that the ultimate parent company of AD Corp is AccessData Group, LLC by virtue of their 100% ownership in AD Corp. . . .

31.     AD Corp, through its auditors, prepared audited financial reports for AD Corp for 2013 ("**2013 Audited Financials**") which were approved by the directors Whitburn and Leehealy wherein it states that the ultimate parents company of AD Corp is AccessData Group, LLC by virtue of their 100% ownership in AD Corp. . . .

32.     The 2013 Audited Financials contain the following statements

> "The validity of the going concern basis is dependent on either its parent company being able to continue to provide financial support or sufficient new capital being raised.
>
> These conditions indicate the existence of a material uncertainty which may cause significant doubt about [AD Corp's] ability to continue as a going concern. The financial statements do not include the adjustments that would result if the Company was unable to continue as a going concern.

. . . The 2013 Audited Financials go on to state that:

> The company is depending on the continued financial support of its parent and also relies on that company for its Turnover. Whilst the directors of the parent company have confirmed their commitment to financially support the Company for the next 12 months, it is unclear from the financial records available whether there will be sufficient funds available to provide this support. The directors of the parent company have also confirmed that they are seeking to raise further funds to support the company, but at the date of signing these accounts, these funds have not yet been confirmed.

40.     Upon information and belief no payments were made to AD Corp under the Shared Services Agreement.

41.     On August 14, 2015, seventy-seven (77) days *after* the Judgment was entered against AD Corp. (as discussed further below), R. Cater Pate, then CEO of AD Group sent a

5

letter to Whitburn and Leehealy (the "**Pate Letter**"). . . .

42. The Pate Letter informs Whitburn and Leehealy of his alleged recent discovery that AD Group was not the owner or parent company of AD Corp, but rather that an investigation was carried out determining that each of Whitburn and Leehealy retained 50% ownership since April 2009.

43. Upon information and belief, the Pate Letter attempts to terminate the Shared Services Agreement in stating that "all associations, agreements, and past engagements with AccessData Group, Inc., are hereby terminated."

44. The Pate Letter does not comply with the specific requirements for termination set forth in the Shared Services Agreement, because it does not provide 60 days prior notice before termination and, upon information and belief, the Pate Letter was not sent by certified mail

45. Prior to delivery of the Pate Letter, AD Group was actively involved in the Arbitration (defined in Complaint) and upon information and belief had funded the litigation for AD Corp.

58. At no time did AD Corp or AD Group make any effort to modify or distinguish the representations it made regarding the AD Corp IP in the Distributor Agreement or Other AD Corp Agreements.

70. Attached to the AD Corp Arbitration brief was the declaration of Whitburn ("**Whitburn Testimony**") which stated in part that Whitburn was "the Executive Vice President of Global Sales for [AD Corp]." . . .

83. Upon information and belief, AD Corp is insolvent and, partially as a result of the transfer of payments due to AD Corp being sent to a bank account for AD Group, AD Corp has never been sufficiently capitalized to pay even a notable percentage of the Judgment Amount.

100. Pursuant to a writ of execution issued by the United States District Court for the District of Utah, that certain Constable's Sale occurred on November 18, 2015, selling certain

6

collateral of AD Corp including but not limited to . . . [a]ll choses in action of AccessData Corporation Limited . . . ."

100. At the Constable's Sale on November 18, 2015, Privacy purchased all right title and interest to the AD Corp Collateral and the same was conveyed to Privacy by Certificate of Sale . . . ."

148. While insolvent, Whitburn, as Director, and Leehealy, as Director and chief executive officer of AD Corp, owed AD Corp and its creditors a fiduciary duty. As such, Whitburn and Leehealy had the duty to act with the utmost good faith and in the best interests of AD Corp.

149. Whitburn and Leehealy breached their fiduciary duties by, among other things, failing to enforce the Shared Services Agreement, thereby providing readily distributable cash to repay creditors, and by taking such positions and actions against Privacy as a creditor to cause AD Corp to incur additional and unnecessary exposure and expenses.

150. Leehealy also breached his fiduciary duties by directing the formation of Resolution1 Security which deprived AD Corp from the benefit of cybersecurity products under the Shared Services Agreement and Privacy under the Distribution Agreement creating a unit to be sold to directly compete with AD Corp.

151. AD Corp was able to undertake such projects, such projects were in AD Corp's line of business, and would have been a practical advantage to the corporation. Moreover, AD Corp, with Leehealy as its Director and Chief Executive Officer, had an interest and reasonable expectancy of obtaining such projects.

152. Further, Leehealy breached his fiduciary duty to AD Corp by soliciting current and former customers and vendors of AD Corp to become customers and vendors of AD Group and Resolution1, all to the detriment of AD Corp and Privacy.

153. As a proximate result of Leehealy and Whitburn's actions, AD Corp has been damaged in an amount to be determined at trial, but believed to be at least the amount of the Judgment.

## LEGAL STANDARD

A motion for judgment on the pleadings must be denied "unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of [its] claim." Mostowy v. United States, 966 F. 2d 668, 672 (Fed. Cir. 1992) (emphasis added); see also Qwest Communications Corp. v. City of Berkeley, 208 F.R.D. 288, 291 (N.D. Cal. 2002). Even after Ashcroft v. Iqbal, 556 U.S. 662 (2009), the courts have held that to survive a Rule 12(c) motion, the complaint need only contain sufficient facts that, if accepted as true, would state a claim that is plausible on its face. Chavez v. United States, 683 F. 3d 1102, 1108-09 (9th Cir. 2009). "Defendant's motion for judgment on the pleadings must be denied unless it appears to a certainty that plaintiffs are entitled to no relief under any state of facts that could be proved in support of its claim." Mullaney v. Albertson's, Inc. (In re Mullaney), 179 B.R. 942, 945 (D.Colo.1995)(citing Brown v. Bullock, 194 F.Supp. 207 (D.N.Y.1961), affirmed, 294 F.2d 415 (2nd Cir.1961)).

In the context of this motion, the Court must accept as true all matters alleged in the responding party's pleadings, and it must construe in plaintiff's favor all reasonable inferences from the facts pled. United States v. Colorado Supreme Court, 87 F.3d 1161, 1164 (10th Cir.1996). The Court may also consider documents attached to, mentioned in, or not attached but "integral" to the complaint, without converting the Rule 12(c) motion into a summary judgment motion. See, L-7 Designs, Inc. v. Old Navy, LLC, 647 F. 3d 419, 422 (2nd Cir. 2011); Massey v. Ojaniit, 759 F. 3d 343, 347-348 (4th Cir. 2014).

# ARGUMENT

## I. As the Owner of the AD Corp Collateral, Privacy-Assured Has Standing to Sue These Defendants for Breach of Fiduciary Duties Owed to AD Corp.

In Privacy-Assured's motion for partial summary judgment, it showed that as a matter of law it is now the owner of the "AD Corp Collateral," including all choses in action of AD Corp against third persons.  See Plaintiff's Motion for Partial Summary Judgment (August 12, 2019) (Dkt. 72) at 7.  Privacy-Assured showed that, as the owner of AD Corp's claims against third parties, it is the only party with standing to sue those third parties on AD Corp's behalf.  Id. at 9.

In response to Privacy-Assured's motion for partial summary judgment, AD Corp argued that the November 2015 constable's sale (pursuant to which Privacy-Assured acquired the collateral) is void because this Court's writ of execution was allegedly not served on AD Corp. See AccessData Corporation Limited's Opposition to Plaintiff's Motion for Partial Summary Judgment (September 9, 2019) (Dkt. 74).  In reply, however, Privacy-Assured showed as a matter of law that (1) the constable conducting the sale lawfully served the writ of execution and the standard notice of exemptions and reply forms by personal service on AD Corp's offices in Utah, and (2) the same were served on counsel for AD Corp, Mr. Leehealy, and Mr. Whitburn through the Court's ECF system.  See Plaintiff's Reply Memorandum in Response to Defendant AccessData Corporation Limited's Opposition to Motion for Partial Summary Judgment (September 23, 2019) (Dkt. 78.).  Privacy-Assured's reply memorandum also showed that AD Corp's challenge to the constable's sale is an unlawful collateral attack and must be rejected for that reason as well.  Id. at 5-6.

The argument made in the present motion that Privacy-Assured lacks standing to sue Mr. Leehealy and Mr. Whitburn is therefore groundless.  Privacy-Assured is, in fact, the only party

with standing to sue them on AD Corp's behalf for having systematically stripped the company of its assets and for having deprived the company of the ability to meet its obligations.

II.     **Under the Laws of the United Kingdom, These Defendants Owe Fiduciary Duties Directly to AD Corp's Creditors, including Privacy-Assured.**

Companies like AD Corp organized under the laws of the United Kingdom are governed by the Companies Act of 2006 (the "**Companies Act**").[3]  Under that Act, directors are, of course, bound by statutory and fiduciary duties to the company itself.  Thus, Chapter 2 of Part 10 of the Companies Act (sections 171 to 177) sets forth the general duties of directors and officers, including the duties to exercise independent judgment, reasonable care, and avoid conflicts of interests.  Under normal circumstances, directors owe their duties only to the company of which they are fiduciaries.  But when the company becomes insolvent, the directors' duty to promote the success of the company is replaced by a duty to act in the best interests of the company's creditors (see section 172, paragraph 331, Companies Act Explanatory Notes). In this situation, directors must protect the value of the company's assets and minimize losses to creditors as far as possible.  (A copy of the relevant provisions of the Companies Act and the Explanatory Notes are annexed as Exhibit 1 to this memorandum.)  Courts in the United States have reached similar conclusions.  For example, the Delaware courts hold that directors of an insolvent corporation owe duties to creditors that may be enforceable in a derivative action on behalf of the corporation. See N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla, 930 A.2d 92 (Del. 2007) ("[T]he creditors of an insolvent corporation have standing to maintain derivative

---

[3] The complete Companies Act can be found at
http://www.legislation.gov.uk/ukpga/2006/46/pdfs/ukpga_20060046_en.pdf

10

claims against directors on behalf of the corporation for breaches of fiduciary duties. The corporation's insolvency 'makes the creditors the principal constituency injured by any fiduciary breaches that diminish the firm's value.'")

In sections 171-77, the Companies Act prohibits a list of behaviours as breaches of a director's duties. These include:

- Acts exceeding the scope of the company's constitution (excess of power), and acts within the scope of the company's constitution but done for an improper reason (abuse of power).
- Taking a decision where the director did not honestly and in good faith believe that he acted in a way most likely to promote the company's success for the benefit of its shareholders, or made a decision that a reasonable, honest and intelligent director could not have concluded would promote the company's success.[4]
- When the company is at risk of becoming insolvent, unreasonably overlooking the interest of a large creditor will be in breach of a director's duty to promote the success of the company under section 172 of the Companies Act.
- Where a director places himself in a position where there is a conflict between the duties owed to the company and personal interests or other duties owed to a third party (exploitation of property, information or opportunity), whether or not the director is aware of the existence of a conflict, unless the situation could not reasonably be regarded as likely to give rise to a conflict of interest.
- Exploiting the position of director for personal benefits if it may reasonably be regarded as likely to give rise to a conflict of interest.

The United Kingdom also enforces the obligations of corporate directors in the Insolvency Act of 1986, found in Chapter 45 of the United Kingdom's General Public Acts (the "**Insolvency Act**").[5] Under section 213 of the Insolvency Act, directors are liable to creditors if they have knowingly carried on business with the intent to defraud creditors or for any other fraudulent purpose. Under section 214 of the Insolvency Act, directors are also liable if they have engaged

---

[4] For example, causing the company to make certain payments, despite knowing that the company had been unable to pay its debts as they fell due and that the value of its assets was less than its liabilities (Hellard v Carvalho (Ch), 25 September 2013, reported in [2013] EWHC 2876 (Ch)).
[5] The Insolvency Act may be found at http://www.legislation.gov.uk/ukpga/1986/45/contents.

in wrongful trading, provided two conditions are met: (1) the company has gone into insolvent liquidation, and the director at the time knew or ought to have known that there was no reasonable prospect that this could have been avoided; and (2) the directors have failed to establish that they have taken every step to minimize the potential loss to creditors. Under section 212 of the Insolvency Act, upon a finding by the court of wrongful trading, directors may be ordered to repay the amount the court believes is just to the creditor bringing such an action. Under section 214(3), the burden of proof falls on the director or former director to show that he has taken every step to minimise the potential loss to creditors. (A copy of the relevant provisions of the Insolvency Act are annexed as Exhibit 2.)

Thus, under the laws of the United Kingdom, Mr. Leehealy and Mr. Whitburn owe fiduciary duties to the AD Corp that may be enforced by Privacy-Assured, as AD Corp's principal creditor.

**III.     Privacy-Assured Has Adequately Pled Its Breach of Fiduciary Duty Claims.**

If the Court assumes the truth of Privacy-Assured's allegations, as it must, the present motion must be denied. Mr. Leehealy and Mr. Whitburn were directors of AD Corp at all relevant times. In spite of their positions of trust, they breached their duties to AD Corp and its creditors by failing to exercise independent judgment, failing to exercise reasonable care, skill and diligence, and failing to avoid conflicts of interest. Their misconduct, which stripped AD Corp of its assets, occurred while AD Corp was admittedly insolvent. To be clear, Mr. Leehealy, Mr. Whitburn, and their company AD Group are responsible for rendering AD Corp insolvent. Privacy-Assured now stands in the shoes of AD Corp and for that reason has standing to sue

these defendants. In addition, since Privacy-Assured is AD Corp's principal creditor, it has standing to sue under both the Companies Act and Insolvency Act. The motion should be denied.

## CONCLUSION

For the reasons set forth above, Privacy-Assured asks the Court to deny the present motion.

DATED this 10th day of October, 2019.

                                                  **SNELL & WILMER L.L.P.**

                                                  /s/ Timothy J. Dance
                                                  Timothy J. Dance
                                                  Alan Sullivan, *of counsel*
                                                  *Attorneys for Plaintiff Privacy-Assured Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 10th day of October, 2019, a true and correct copy of the foregoing PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS was served via CM/ECF to the following:

**Randall L Skeen**
COOK SKEEN & ROBINSON
5788 S 900 E
SALT LAKE CITY, UT 84121-2178
(801)266-7414
Email: rskeen@skeenandrobinson.com

**Shawn H. Robinson**
COOK SKEEN & ROBINSON
5788 S 900 E
SALT LAKE CITY, UT 84121-2178
(801)266-7414
Email: srobinsonlaw@hotmail.com

**Jordan K. Cameron**
DURHAM JONES PINEGAR PC
3301 N THANKSGIVING WY STE 400
LEHI, UT 84043
(801) 375-6600
Email: jcameron@djplaw.com

**Peter H. Donaldson**
DURHAM JONES & PINEGAR
111 S MAIN ST STE 2400
PO BOX 4050
SALT LAKE CITY, UT 84110-4050
(801)415-3000
Email: pdonaldson@djplaw.com


　　　　　　　　　　　　　　　　　　　　　　 /s/ Timothy J. Dance

4848-4786-3209.1