Timothy J. Dance (11553)
Alan L. Sullivan (3152), *of counsel*
Snell & Wilmer L.L.P.
15 West South Temple, Suite 1200
Salt Lake City, Utah 84101
Telephone: (801) 257-1900
Facsimile: (801) 257-1800
Email: tdance@swlaw.com
       asullivan@swlaw.com

*Attorneys for Plaintiff Privacy-Assured Inc.*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| PRIVACY-ASSURED INC., a Canadian Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>ACCESSDATA CORPORATION LIMITED, a Corporation organized under the laws of England and Wales, ACCESSDATA GROUP, INC., a Delaware Corporation, TIMOTHY LEEHEALY, an individual, SIMON WHITBURN, an individual, and JOHN DOES 1-10<br><br>Defendants. | **PLAINTIFF'S OPPOSITION TO DEFENDANT ACCESSDATA GROUP, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S FOURTH, FIFTH, AND SIXTH CAUSES OF ACTION**<br><br><br>Case No. 2:16-cv-00275-CW<br><br>Judge Clark Waddoups |

Plaintiff Privacy-Assured Inc. ("**Privacy-Assured**") respectfully submits this opposition to the Motion for Partial Summary Judgment on Plaintiff's Fourth, Fifth, and Sixth Causes of Action (dated September 13, 2019) (the "**Motion**") (Dkt. 76), filed by defendant AccessData Group, Inc. ("**AD Group**").

**SUMMARY**

In the Fourth Cause of Action, Privacy-Assured seeks an order quieting its title to the collateral acquired in the 2015 execution sale conducted as part of the Judgment Collection Action (defined below) before this Court. In the Fifth Cause of Action, Privacy-Assured asks for a declaration that the execution sale validly transferred ownership of the collateral. In the Sixth Cause of Action, Privacy-Assured seeks relief against AccessData Group for breach of the 2009 Shared Services Agreement; it does so as successor to AccessData Corporation Limited ("**AD Corp**") pursuant to rights acquired in the execution sale. The Motion argues that these three causes of action should be dismissed because, according to AD Group, the execution sale was void. It argues that Privacy-Assured's Writ of Execution was incomplete and was never served on AD Corp as judgment debtor. The record shows, however, that the well before the execution sale the constable lawfully served the Writ of Execution, together with the standard notice of exemptions and reply form, by personal service at AD Corp's offices in Lindon, Utah. The record also shows that about a month before the sale the Writ of Execution (including notice of the execution sale) was automatically served on counsel of record for AD Corp, Mr. Leehealey, and Mr. Whitburn through the Court's electronic court filing system. Beyond all of this, AD Group's argument should be rejected as an unlawful collateral attack on the execution sale process.

AD Group also argues that the intellectual property sold to Privacy-Assured in the execution sale ("**AD Corp IP**") was actually owned at the time by AD Group (rather than AD Corp) and therefore could not have been sold under the Writ of Execution. This argument fails as a matter of law because AD Group's lawyers, officers, and witnesses repeatedly represented to Privacy-Assured—and later to the arbitrator in the underlying arbitration and this Court in the Judgment Collection Action—that AD Corp (not AD Group) was the owner of the AD Corp IP. As shown below, that was the explicit premise of AD Corp's Distributor Agreement with

2

Privacy-Assured, and that was the explicit premise of AD Corp's arguments and testimony to the arbitrator and to this Court in the Judgment Collection Action.  For this reason, AD Group is now barred from claiming title to these assets—especially where it has tried to deceive the Court and cause prejudice to Privacy-Assured by permitting its subsidiary to hold itself out as the owner for years.  The Court should not allow AD Group's officers and lawyers to obtain an advantage by playing a shell game with these assets.

## RESPONSE TO STATEMENT OF UNDISPUTED MATERIAL FACTS

1.  AD Corp did not develop any products of their own.  *See Trotter Depo.*, at 93:9-11, Exhibit 4, hereto; *see* Response to Interrogatory No. 2, Exhibit 3, hereto.

**RESPONSE:** Disputed.  Privacy-Assured and AD Corp entered into the AccessData Distributor Agreement in March 2012 (the "**Distributor Agreement**"), which was signed by AD Group's Associate General Counsel, William Fountain, on AD Corp's behalf.  (A copy of the Distributor Agreement is attached as Exhibit 1 to this Opposition.)  In the first recital of the Distributor Agreement, AD Corp represented to Privacy-Assured that AD Corp developed, manufactured, and owned all AD Corp IP sold under the Distributor Agreement.  The same representations regarding ownership were made by AD Corp in the Arbitration Case No. 50 117 T 00199 13 ("**Arbitration**"). See AccessData Corporation Limited's Pre-Hearing Arbitration Brief at ¶¶ 1-76.  (A copy of this brief is attached as Exhibit 2.)  AD Group officers who identified themselves as officers of AD Corp made the same representations to the arbitrator in their written testimony.  See, e.g., Written Testimony of Simon Whitburn, dated June 1, 2014 (attached as Exhibit 3) at ¶¶ 1,2, & 8; and Written Testimony of Troy Clark, dated May 30, 2014 (attached as Exhibit 4) at ¶¶ 6 & 54.  AD Corp's lawyers continued to identify AD Corp as the

3

owner of the AD Corp IP in representations to this Court in the Judgment Collection Action  See AccessData Corporation's Motion to Vacate or, in the Alternative to Modify Arbitration Award, dated October 27, 2014 (Dkt 7).  (A copy of this motion is attached as Exhibit 5.)

2. ACL was only a reseller of other's product.  *See Trotter Depo.* at 93:15-17, Exhibit 4, hereto; *see J. Cook Depo.,* at 32:18-21.

**RESPONSE:**  Disputed.  See response to Fact 1, above.

3. ACL did not own any IP of any kind including FTK, MPE, and Triage, AD Lab, AD Enterprise, AD eDiscovery, AD ECA, Summation, Summation Pro, SilentRunner, and CIRT, and any other items of Software identified on AccessData's website along with all concepts, works, and materials related to such. *See LeeHealey Depo*. 81:17—83:9, Exhibit 1, hereto. *See* Response to Interrogatory No. 2, Exhibit 3, hereto; *see J. Cook Depo.*, at 48:1-12, 50:2-19.

**RESPONSE:** Disputed.  See response to Fact 1, above.

4. The references to intellectual property such as FTK, MPE, and Triage, AD Lab, AD Enterprise, AD eDiscovery, AD ECA, Summation, Summation Pro, SilentRunner, and CIRT, on various agreements, including the *Distributor Agreement* between ACL and Privacy-Assured, were typos. *See J. Cook Depo*. at 38:15—39:8, 39:15—40:6, 43:7-23, 48:1-12, 50:2-19.

**RESPONSE:** Disputed.  See response to Fact 1, above.

5. On October 21, 2015, Privacy obtained a *Writ of Execution*. *See Writ*.

**RESPONSE:** Undisputed.

6. The *Writ* is incomplete as it does not include a notice of exemption and reply form. *See id*.

**RESPONSE:** Disputed. See Additional Undisputed Facts, below.  As a matter of law, (1) the constable conducting the execution sale lawfully served the Writ of Execution and the standard notice of exemptions and reply form by personal service on AD Corp's offices in Utah,

4

and (2) the same papers were timely served on counsel for AD Corp, Mr. Leehealy, and Mr. Whitburn through the Court's ECF system.  See Plaintiff's Reply Memorandum in Response to Defendant AccessData Corporation Limited's Opposition to Motion for Partial Summary Judgment, dated September 23, 2019 (Dkt. 78.)

7. The *Writ* does not contain a proof of service. *See id*.

**RESPONSE:**  Disputed. See response to Fact 6, above.

8. The *Writ* was never served on ACL. *See LeeHealey Decl.*, at ¶¶ 2-4.

**pRESPONSE:**  Disputed. See response to Fact 6, above.

## ADDITIONAL UNDISPUTED FACTS

1. On October 8, 2015, Shawn Robinson and Randall Skeen of Cook, Skeen & Robinson entered their appearance in this Court's Case No. 2:14-cv-00722 (the "**Judgment Collection Action**"), as counsel for AD Corp.  Dkt. 40.  Up to that point, these defendants had been represented by Milo Steven Marsden of Dorsey & Whitney.  On October 29, 2015, the Court granted Mr. Marsden's motion for leave to withdraw.  (Dkt. 63.)

2. On October 21, 2015, a Writ of Execution was issued in the Judgment Collection Action, and notice of the November 18, 2015 execution sale was automatically sent to all parties. (Dkt 59.)  This notice, sent through the Court's ECF system, was thus complete after Mr. Robinson and Mr. Skeen had entered their appearances and before Mr. Marsden withdrew.

3. On or about October 22, 2015, Silvan Warnick, a licensed constable in the state of Utah, was requested to levy and execute by public sale on the collateral described in the Writ. See Declaration of Silvan Warnick ("**Warnick Declaration**") at 2.

4. In accordance with the terms of the Writ, Constable Warnick set a sale date of November 18, 2015 at 10:00 a.m. at his offices at 43 W. 9000 S., Sandy, Utah. Warnick Declaration at 3.

5. Constable Warnick personally served a copy of the Writ on AD Corp, as judgment debtor, along with all accompanying filings, exemption forms, and reply and request for hearing forms. Constable Warnick made service at AD Corp's offices in Lindon, Utah on November 4, 2015. Warnick Declaration at 4.

6. In addition, Constable Warnick posted notice of the execution sale in the federal courthouse and in at least three other public places in Salt Lake County. Warnick Declaration at 5.

7. Constable Warnick also published notice of the execution sale of all items contained within the Writ in the Intermountain Commercial Record for November 17, 2015, and online at Utahlegals.com. Warnick Declaration at 6.

8. On November 18, 2015 Constable Warnick conducted the execution sale in accordance with the terms of the Writ and sold the property to Privacy-Assured Inc., as set forth in the Certificate of Sale dated November 21, 2015, in the Judgment Collection Action. Warnick Declaration at 7.

9. In September of 2011 AD Corp and AD Group entered into that certain Shared Services Agreement ("**Shared Services Agreement**"). See Complaint and Answer at ¶ 34.

10. AD Group's Associate General Counsel testified that he signed the Privacy-Assured Distribution Agreement on behalf of AD Corp under authority of the Shared Services Agreement. Deposition of William Fountain (July 12, 2019) at 33: 23-25 and 34:1-5. Relevant portions of this deposition are attached hereto as Exhibit 6.

6

**ARGUMENT**

**I.     The Constable's Execution Sale Was Lawful.**

The constable's execution sale was held in full compliance with the terms of the Writ, with Rule 64, Federal Rules of Civil Procedure, and with Rules 64E and 69B, Utah Rules of Civil Procedure. Federal Rule 64(a) directs the Court to the rules of the state in which the Court is located for the procedure for seizing property to secure satisfaction of a judgment. Pursuant to Rule 64E, Utah Rules of Civil Procedure, a writ of execution is available to seize property in the possession or under the control of the defendant following entry of a final judgment. Utah Rule 69B(b) states, "The officer shall set the date, time and place for sale and serve notice thereof on the defendant . . . ." The same rule then states, "The officer shall publish notice of the date, time and place of sale as follows . . . ." *Id*. Utah Rule 64(a)(10) defines "serve" for purposes of Rule 69B as "any method of service authorized by Rule 5," as opposed to Rule 4.

Utah Rule 5(b) requires service upon a party's attorney where the party is represented by counsel. Under Utah Rule 64, if a party with an interest is not given notice in accordance with the rules, the party may object to the writ of execution any time before the property is sold. If there is no objection, the constable may proceed with the sale pursuant to Utah Rule 64E(d)(3). Accordingly, lack of notice to parties is not sufficient to invalidate the Writ of Execution, and a defect in service does not necessarily mean that the sheriff's sale must be set aside. *See Pyper v. Bond*, 2011 UT 45, ¶ 15 (stating that a sheriff's sale may be set aside where the price is "grossly inadequate" and there are "irregularities during the sale that contributed to the inadequacy of price or circumstances of unfairness").

AD Group's Motion contends there is no evidence that the Writ was properly issued and that there is no evidence in the record that Plaintiff ever served the Writ on AD Corp. These allegations, however, are mistaken as a matter of law. For purposes of Utah Rule 64, service was complete the moment AD Corp's two sets of attorneys (at Cook, Skeen & Robinson and at

Dorsey & Whitney) received notice of the Writ though the Court's ECF notification system on October 21, 2015.  Beyond this, Constable Warnick personally served notice on AD Corp's offices, posted notice as required by law, and published notice of the execution sale.  Neither AD Corp nor any other party objected to the Writ or the execution sale.  Because notice and service were proper, AD Corp was properly divested of its collateral.  See *Lamoreaux v. Black Diamond Holdings, LLC*, 2013 UT App 32, 296 P.3d 780.

## II. The Motion Is an Unlawful Collateral Attack on the Execution Sale.

AD Group's Motion improperly attempts to attack the execution sale in the present case after having failed to raise its concerns in the Judgment Collection Action.  It has long been the rule in Utah that an execution sale cannot be attacked in a collateral proceeding. *Bangerter v. Petty*, 228 P.3d 1250 (2010). Courts universally require such attacks to be made in the case in which the execution occurs, so that they can be promptly and efficiently adjudicated. Utah has consistently followed this general principle and has refused to hear collateral attacks on sheriff's sales. See *Acott v. Union Carbide Nuclear Co. (Acott II )*, 10 Utah 2d 140, 349 P.2d 620 (1960).

*Acott II* was an affiliate action to *Acott v. Tomlinson*, 9 Utah 2d 71, 337 P.2d 720 (1959) (*Acott I* ), in which a sheriff's deed was issued to Union Carbide. In *Acott II*, third party defendant/appellant Tomlinson asked that the sheriff's sale be declared void, arguing that Union Carbide "knew or should have known that the execution sale was wrongful." Id. The *Acott II* court held that Tomlinson's claim was improper because it was an attempted collateral attack on the title and therefore impermissible

Here, as in *Acott II* , the constable was authorized under the Writ to conduct the sale and did so.  AD Group, who was entitled to intervene as an interested party in the Judgment Collection Action failed to do so, failed to contest the Writ and failed to object to the sale.  The nature of the defect complained of by AD Group, even if true, would merely make the sale

voidable.  Its failure to raise that claim in the Judgment Collection Action disqualifies it from relief in this case.

### III. Privacy-Assured Obtained Ownership of the AD Corp IP at the Execution Sale.

After years of contrary statements to Privacy-Assured, the arbitrator, and this Court, AD Group now asserts that it, not AD Corp, owned the AD Corp IP that Privacy-Assured purchased in the execution sale.  AD Group, however, is now barred from making this argument because of the history of AD Corp's and AD Group's representations to the contrary.

It is a well-recognized principle that the true owner of property is estopped from claiming title where he has permitted another to hold himself out as the owner to the prejudice of an innocent person.  First Nat. Bank of Fleming, Colo. v. Petzoldt, 262 F.2d 540, 545 (10th Cir. 1958); Pauly v. State Loan & Tr. Co., 165 U.S. 606, 612, 17 S. Ct. 465, 467, 41 L. Ed. 844 (1897) (one is estopped from denying his liability by voluntarily holding himself out to the public as the owner of the stock, and his denial of ownership is inconsistent with the representations he has made.)  The principle has even more force where, as here, the persons who made or allowed the representations served as officers of both the parent and the subsidiary that claimed ownership of the assets.  In such situations, these related parties "cannot play a 'shell game" with assets" that a bona fide lender, acting in good faith, has taken as collateral in exchange for extending financing.  In re Terrabon, Inc., No. 12-36805, 2013 WL 6157980, at *11 (Bankr. S.D. Tex. Nov. 22, 2013)  As the court in Terrabon said, the courts will not endorse or allow such a "now you see it, now you don't" game of deception.

AD Group argues that Privacy-Assured could not take title of assets from AD Corp when AD Corp never owned anything.  Although, as a general matter, a person cannot transfer better

9

title to personal property than he has, this is not true where estoppel operates against the person claiming under what would otherwise be the better title. Heaston v. Martinez, 282 P.2d 833, 835 (Utah 1955). Courts generally recognize that, regardless of legal title, "rights in collateral" may be sufficient to give rise to an enforceable interest if the legal title owner either (1) consented to another's use or (2) is estopped because the legal owner allowed the other party "to appear as the owner, or as having full power of disposition over the property, so that an innocent person is led into dealing with such apparent owner." In re Terrabon, Inc. at *5. This is regularly held to be the case with parent/subsidiary relationships where a parent allows a subsidiary to "appear as owner." Id. In Terrabon, the debtor was aware that its subsidiary appeared to be the owner in the eyes of the bank. It was also aware that the subsidiary historically asserted that it possessed the right to dispose of and assign the property. Since the debtor failed to correct or dispute such allegedly false assertions by the subsidiary, it was estopped from claiming otherwise. Accord, Zurita v. SVH–1 Partners, Ltd., No. 03–10–00650–CV, 2011 WL 6118573, at *5 (Tex.App.-Austin Dec. 8, 2011, pet. Denied); In re WL Homes, LLC, 452 B.R. 138, 147 (Bankr.D.Del.2011).

In the Arbitration and in the Judgment Collection Action, AD Group, together with its officers and employees, spoke for AD Corp as authorized representatives under the Shared Services Agreement. AD Group authorized the signing of the Distributor Agreement with Privacy-Assured. By affirmatively representing that AD Corp owned the AD Corp IP, AD Group and its officers induced Privacy-Assured, the Arbitrator, and this Court to believe that they were dealing with the owner of the AD Corp IP. AD Group must accept the consequences of its

10

deception. It is estopped as a matter of law from asserting now that the "real" owner of the AD Corp IP is AD Group.

## CONCLUSION

For the foregoing reasons, AD Group's Motion should be denied.

DATED this 11th day of October, 2019.

                                             **SNELL & WILMER L.L.P.**

                                             /s/ Timothy J. Dance
                                             Timothy J. Dance
                                             Alan Sullivan, *of counsel*
                                             *Attorneys for Plaintiff Privacy-Assured Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of October, 2019, a true and correct copy of the foregoing **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT** was served via CM/ECF to the following:

**Randall L Skeen**
COOK SKEEN & ROBINSON
5788 S 900 E
SALT LAKE CITY, UT 84121-2178
(801)266-7414
Email: rskeen@skeenandrobinson.com

**Shawn H. Robinson**
COOK SKEEN & ROBINSON
5788 S 900 E
SALT LAKE CITY, UT 84121-2178
(801)266-7414
Email: srobinsonlaw@hotmail.com

**Jordan K. Cameron**
DURHAM JONES PINEGAR PC
3301 N THANKSGIVING WY STE 400
LEHI, UT 84043
(801) 375-6600
Email: jcameron@djplaw.com

**Peter H. Donaldson**
DURHAM JONES & PINEGAR
111 S MAIN ST STE 2400
PO BOX 4050
SALT LAKE CITY, UT 84110-4050
(801)415-3000
Email: pdonaldson@djplaw.com

/s/ Timothy J. Dance

4817-9913-9497.1